UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NORMAN G. LEWIS,<br><br>    Plaintiff,<br><br>    v.<br><br>WASHINGTON STATE UNIVERSITY, ELSON S. FLOYD, and WARWICK M BAYLY,<br><br>    Defendants. | No.  CV-12-475-RHW<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Before the Court are Plaintiff's Motion for Partial Summary Judgment, ECF No. 21, and Defendants' Motion for Summary Judgment, ECF No. 22. A hearing on the motions was held on March 27, 2013. Plaintiff was represented by Michael Subit; Defendants were represented by Michelle Barton Smigel and Thomas Sand.

## BACKGROUND FACTS

Plaintiff is a tenured full-professor at Defendant Washington State University (WSU), who is a respected and accomplished scientist and researcher. He is also the director of the Institute of Biological Chemistry. His area of expertise is plant biochemistry with special expertise in wood formation and wood component or wood chemical utilization. His research and work are funded by several major grants.

In 2010 and 2011, Plaintiff, as an employee of WSU, participated in the process of applying for a grant sponsored by the United States Department of

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1**

Agriculture (USDA) and the National Institute of Food and Agriculture (NIFA). The grant involved a multi-institutional/multi-disciplinary consortium entitled "The Northwest Advanced Renewables Alliance." (NARA). The purpose of the project was to develop biologically sustainable aviation fuel and a range of other chemicals and petrochemical replacements from woody plant material. On July 28, 2011, WSU was awarded the grant for the NARA project. Plaintiff and Michael Wolcott were named co-Project Directors for the University.

On March 14, 2012, Michael Wolcott resigned as co-project director, citing irreconcilable differences with Plaintiff. On March 21, 2012, Defendant Floyd sent a letter to Plaintiff informing him that he was being removed as Project Director. He also asked Dr. Ralph P. Cavalieri and Dr. Cook to be Project Directors for NARA. On March 23, 2012, Dr. Floyd sent a letter to USDA informing it that Plaintiff was no longer the Project Director of the NARA grant or a member of the leadership team.

Plaintiff continues to be employed as a professor with tenure at WSU, and he is being paid additional salary from his other research grants.

Plaintiff filed suit in the Eastern District of Washington, asserting that his termination as co-project director without a hearing violated his due process rights.

Both parties moved for summary judgment. Plaintiff argues that summary judgment is appropriate because he has a property interest in continuing in the project director position. Defendants argue summary judgment is appropriate because Plaintiff does not have a protectable property right in the role of project director for the grant. Defendants' position is that the scope of Plaintiff's property interest in his position at the University level extends solely to his role as a tenured faculty member and does not extend to any role on a federally funded research grant. Defendants also move for summary judgment on two theories: (1) Eleventh Amendment Immunity; and (2) Qualified Immunity.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 2

**MOTION STANDARD**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The moving party had the initial burden of showing the absence of a genuine issue of fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party meets it initial burden, the non-moving party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Id.* at 325; *Anderson*, 477 U.S. at 248.

In addition to showing there are no questions of material fact, the moving party must also show that it is entitled to judgment as a matter of law. *Smith v. University of Washington Law School*, 233 F.3d 1188, 1193 (9th Cir. 2000). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323.

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**1.    Eleventh Amendment Immunity**

Defendants argue the Eleventh Amendment bars Plaintiff's claims asserted against WSU and the individually named Defendants to the extent they are being sued in their official capacity.

Immunity under the Eleventh Amendment is a question of law. *Doe v. Lawrence Livermore Nat. Laboratory*, 131 F.3d 836, 838 (9th Cir. 1997). It is

Defendants' burden to prove they are entitled to immunity. *ITSI TV Productions, Inc. v. Agricultural Assocs.*, 3 F.3d 1289, 1291 (9th Cir. 1993). "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616 (2002). "This bar exists whether the relief sought is legal or equitable." *Id.* As such, absent consent, waiver, or abrogation by Congress, if the state is the real party in interest, the case is barred, regardless of the relief sought. 13 Fed. Prac. & Proc § 3524.3 (3rd ed.). Defendant WSU is an instrumentality of the State of Washington. Wash. Rev. Code 28B.30; *see also Flint v. Dennison*, 488 F.3d 816, 824 (9th Cir. 2007) (recognizing that a state university is an arm of the state entitled to Eleventh Amendment immunity). As such, the claim against WSU must be dismissed, because it has not consented to be sued, and 42 U.S.C. § 1983 does not override States' Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979) (holding that 42 U.S.C. § 1983 does not override States' Eleventh Amendment immunity).

While a state's sovereign immunity from suit in federal court normally extends to suits against its officers in their official capacity, there is an exception recognized in *Ex parte Young*, 209 U.S. 123 (1908). *Cardenas v. Anzai*, 311 F.3d 929, 935 (9th Cir. 2002). Under the *Ex parte Young* doctrine, a plaintiff may maintain a suit for prospective relief against a state official in his official capacity when that suit seeks to correct an ongoing violation of the Constitution or federal law. *Id.* at 934-35.

To determine whether Eleventh Immunity applies, courts must focus the inquiry on the substance of the relief sought, rather than on the form of the relief sought. *Papasan v. Allain*, 478 U.S. 265, 279 (1986). Whether the *Ex parte Young* doctrine applies usually turns on one question: Is the relief the plaintiff seeks prospective, aimed at remedying an ongoing violation of federal law, or is it retrospective, aimed at remedying a past violation of the law? *Cardenas*, 311 F.3d

at 935. Thus, the first step is determining whether the claim is retroactive or proactive. *See S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 510 (6th Cir. 2008) (recognizing that the Eleventh Amendment bars all equitable retroactive relief, not just retroactive relief for damages).

In his complaint, Plaintiff seeks an order compelling WSU and the individually-named Defendants sued in their official capacity to conduct a hearing with respect to his removal as Project Director. Although Plaintiff has tailored his claim of relief to an equitable one—basically an injunction ordering Defendants to hold a hearing—this is not dispositive, as *S & M Brands, Inc.* instructs. Plaintiff's claim seeks retroactive relief, that is, seeking to remedy a wrong that occurred in the past, rather than to prevent an ongoing violation of federal law. Holding the hearing would not prevent future harm to Plaintiff, and as such, he is seeking retroactive equitable relief that is barred by the Eleventh Amendment.

Defendant's Motion for Summary Judgment is granted, and the claims asserted against Defendant Washington State University and Elson Floyd and Warwick Bayly in their official capacities are dismissed.

**2.     Qualified Immunity**

The individually-named Defendants, to the extent they are being sued in their individual capacity, argue they are entitled to qualified immunity.

State officials are entitled to qualified immunity from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officials conduct violated a constitutional right; and (2) whether the right was clearly established in light of the specific context of the case. *al-Kidd v. Ashcroft*, 580 F.3d 949, 964 (9th Cir. 2009) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

"Clearly established" depends largely on the level of generality at which the relevant 'legal rule' is identified. *Wilson v. Layne*, 526 U.S. 603, 614 (1999). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Ashcoft v. Al-Kidd*, __ U.S. __, 131 S.Ct. 2074, 2083 (2011). It is within the sound discretion of the district court to address these two prongs in any sequence it sees fit. *al-Kidd*, 580 F.3d at 964 (*quoting Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). "While the right to due process is 'clearly established' by the Due Process Clause, this level of generality was not intended to satisfy the qualified immunity standard. The right the official is alleged to have violated must be made specific in regard to the kind of action complained of for the constitutional right at issue to have been clearly established." *Sinaloa Lake Owners Ass'n v. City of Simi Valley*, 70 F.3d 1095, 1100-01 (9th Cir. 1995).

The concept that certain public employees have a property interest in continued employment that is protected by the Due Process Clause is clearly established. For instance, it is clearly established college professors and staff members dismissed during the terms of their contracts have interests in continued employment that are safeguarded by due process,[1] and a teacher hired without tenure or a formal contract, but with a clearly implied promise of continued employment[2] has interests in continued employment that are safeguarded by due process. *Bd. of Regents v. Roth*, 408 U.S. 564, 576-77 (1972). Consequently, all reasonable officials are expected to know that a "property" right in continued

---

[1] *Slochower v. Board of Education*, 350 U.S. 551 (1957); *Wieman v. Updegraff*, 344 U.S. 183 (1952).

[2] *Connell v. Higginbotham*, 403 U.S. 207, 208 (1970).

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 6

employment exists where there is a state law entitlement to a continued employment that cannot be terminated except for "just cause." *Id.* at 564.

Here, however, the question the Court must answer is not whether public employees have a property interest in continued employment, but whether it was clearly established that a public university's removal of a faculty member as project director for a federal grant was subject to the due process clause. To answer that question the Court must determine the level of generality at which the relevant 'legal rule' is to be identified and the level of generality appropriate in this case can be determined by asking the following question: Were the actual facts confronting Defendants such that, at the time in question, no reasonable administrator could have believed that a faculty member's position as co-project director could be terminated at will.

In his briefing, Plaintiff relied on *Malla v. Univ. of Conn.*[3] and at the hearing Plaintiff argued the Ninth Circuit's case of *Peacock v. Bd. of Regents*[4] clearly established that a faculty member has a property interest in serving as project director for a federal grant. He also identified *Hamid v. John Jay College of Criminal Justice*,[5] an unpublished opinion from Judge Knapp, Senior District Judge from the Southern District of New York.

In *Peacock v. Board of Regents*, a tenured professor argued he possessed a property interest in the position as Department Head. 510 F.2d 1324, 1326 (9th Cir. 1975). The university argued that the position was quasi-administrative and the heads of departments are appointed by and serve at sufferance of the university president, and tenure could not be attained in the position. *Id.* at 1326. Consequently, department head positions were subject to the unfettered discretion

---

[3]*Malla v. Univ. of Conn.*, 312 F. Supp.2d 305 (D. Conn. 2004).

[4]*Peacock v. Board of Regents*, 510 F.2d 1324 (9th Cir. 1975).

[5]2000 WL 666344 (S.D. N.Y. 2000).

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 7

of the president, who could dismiss department heads at any time and for any reason or for no reason. *Id.* The Circuit made the following observation, "We think there is a great deal of merit in the University's contention that the contractual appointment should be read as merely delimiting the term during which appellant was to serve at sufferance, and that, as the position was terminable at will, he had no protected interest in it." *Id.* The Circuit ultimately declined to find the district court's conclusion that the professor had a property interest in the position was clearly erroneous, given the posture of the case a complete record had not been developed at trial. *Id.* at 1327.

In *Malla v. Univ. of Conn.*, a professor sued the university in connection with his removal from his position as campus director for a space grant consortium. The professor argued that his source of entitlement to the director position arose from an implied provision of a contract with the university that was created by the course of dealing between him and the university. *Id.* at 321. The district court of Connecticut, relying on controlling Second Circuit law, held that the professor's allegations, if proven, established that he had a property interest in a position as campus director. *Id.* Factors the professor relied upon were that he served as campus director for nine years, his own expectation that he would remain as campus director for as long as there was a space grant consortium, the fact that he received money for serving as campus director, the position was not subject to annual review, the university's custom that the writer of the grant is entitled to be the lead principal investigator on it if received. *Id.*

In *Hamid*, the district court, in ruling on a motion to dismiss, held that the "plaintiff should have the chance to show that the College fostered a custom or mutual understanding that its faculty and administration would not interfere with a tenured professor's research based merely upon their prejudices or their disagreement with its direction or results." The court reasoned that the right to guide a research project and receive funding constituted an integral part of social

science scholarship. *Id.* Ultimately, the court held the defendants were not entitled to qualified immunity because U.S. Supreme Court law, including *Roth* and *Perry* sufficiently explained that unwritten "tenure rights" demand the strictures of due process. *Id.*

      These cases are easily distinguishable from the present case and thus do not clearly establish that a faculty member has a property interest in continuing to serve as a co-project director on a federal grant. In *Peacock*, the professor had a one-year contract that included the position as Department Head, which would provide the basis for the property interest. 510 F.2d at 1325. Even so, the Ninth Circuit expressed doubt as to whether the position as Department Head was a protected property interest. *Id.* at 1326-27. Here, Plaintiff did not have a contract with the University that covered his position as co-project director for the NARA grant. *Peacock* is not applicable and thus, cannot be relied upon to set forth clearly established law.

      In *Malla*, the professor had held the position as project director for nine years and was being paid. Here, at the time Plaintiff was terminated as project director, he had only been there seven months and was not receiving compensation for serving in the position. In *Hamid*, the district court relied, in part, on the college's unwritten tenure rights to find that the professor had stated a due process claim. Here, Plaintiff has not alleged, or established, that he had tenure in the position as co-director or that any unwritten tenure rights covered the position.

      Moreover, Circuits, other than the Ninth Circuit, have held that transfers of tenured professors from one department to another, without loss of rank or pay, does not implicate any property interest protected by the Due Process Clause. *See Huang v. Bd. of Governors of the Univ. Of North Carolina*, 902 F.2d 1134, 1142 (4th Cir. 1990) (holding transfer of tenured professor from one department to another, without loss of rank or pay, does not implicate any property interest protected by due process clause); *Maples v. Martin*, 858 F.2d 1546, 1550-15 (11th

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 9

Cir. 1988) (rejecting plaintiffs' claims that there was an implied understanding that faculty members would not be transferred from one department to another against their will); *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988) (demotion from department chairman to professor not a denial of a protected property interest); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir. 1985) (reduction of graduate student's teaching duties not a denial of protected property interest); *see also Volk v. Coler*, 845 F.2d 1422, 1430 (7th Cir. 1988) (no property interest in employment in a particular state welfare agency office); *Childers v. Independent School District No. 1,* 676 F.2d 1338, 1341 (10th Cir. 1982) (tenured secondary school teacher has no property interest in particular teaching assignment).

Consequently, it was not clearly established that Plaintiff has a property interest in his position as co-project director for a federal grant, sufficient to put the administrators at Washington State University on notice that removing him as project director required a pre- or post-termination hearing. As such, the Court grants Defendants' Motion for Summary Judgment, finding that the individually-named Defendants are entitled to qualified immunity.

### 3. Property Interest

Even though the Court has concluded that Defendants are entitled to qualified immunity, for the sake of completeness, the Court will consider whether Plaintiff has a property interest in the position as Project Director of a federal grant.

Plaintiff argues the WSU Faculty Manual provides the source for a property interest because it provides substantive predicates and outcomes, and his removal as project director constituted a suspension. He also argues that the course of dealing between Plaintiff and WSU created a property interest in his continuation as a project director. Finally, he argues that his appointment to the position of Project Director as part of the grant application constituted a contract for a specific period of time, and under Washington law, he cannot be terminated at will during

the contract period.

Defendants maintain the faculty manual does not contain any provisions protecting Plaintiff's position as project director, and he was not "suspended" as contemplated by the manual. Defendants assert that case law limits the scope of a tenured professor's property right to tenure and pay. Since none of these are implicated, Plaintiff cannot show he has a property interest.

To state a claim under the Due Process Clause, a plaintiff must first establish that he possessed a "property interest" that is deserving of constitutional protection. *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
>
> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vendicate those claims.

*Roth*, 408 U.S. at 577.

The Faculty Handbook is silent regarding any entitlements to positions associated with federal grants. With respect to tenure positions, the Handbook provides:

> *Tenured Appointment*
> Upon having attained tenured status, the faculty member shall continuously hold appointment with WSU until retirement, resignation, or termination pursuant to the terms of the *Faculty Manual*.
>
> The acquisition of tenure requires affirmative action by the President of the University by delegation of authority from the Board of Regents. Tenure, once granted, is retained by the faculty member until he or she retires or ceases to be an employee of the University.

ECF No. 33-6 at 15-16.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 11

> 5. Tenure
>     a) General
> Tenure is granted only for academic rank or professional status within programs, departments, or service units. Department Chairs, School Directors, Deans, Directors, and other administrative officers do not acquire in administrative positions.

ECF No. 33-6 at 31.

With respect to disciplinary proceedings, the Handbook provides:

> F. Disciplinary Process/Procedures
>
> 4. Types of Discipline
> The sanctions that may be imposed include warning, censure, suspension, termination, and in emergency situations, summary suspension.
>     b. Formal Discipline
>         i) Suspension
> Suspension is defined as any one of or combination of the following measures: temporary release from or reduction in assigned responsibilities, reduction or suspension of pay, denial or postponement of an opportunity for a professional promotion within the University, professional leave from the University.

ECF No. 33-6 at 4.

The parties disagree in interpreting the disciplinary procedures contained in the Handbook. Plaintiff's interpretation begins with the definition of suspension. He argues that because he had a reduction in assigned responsibilities, he was subject to discipline, and therefore, he was entitled to procedural due process in the form of a post-deprivation hearing. Defendants maintain that Section F does not come into play unless the faculty member was accused of engaging in conduct enumerated in section F.3, such as incompetence or serious or repeated neglect of duty, misconduct in research and scholarship, discrimination, retaliation, forgery, theft, falsification, illegal use of narcotic or dangerous drugs. *See* ECF No. 33-6 at 2.

Procedural interests under state law are not themselves property rights that are protected by the Constitution. *Olin v. Wakinekona*, 461 U.S. 238, 248-51 (1983). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitled." *Id.* at 250. "The State may choose to require procedures for reasons other than

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 12

protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right. *Id.* Procedural requirements ordinarily do not transform a unilateral expectation into a constitutionally protected property interest. *Goodisman v. Lytle,* 724 F.2d 818 (9th Cir. 1984). A constitutionally protected interest is created only if the procedural requirements are intended to be a "significant substantive restriction" on the University's decision making. *Id.* If the procedures required impose no significant limitation on the discretion of the decision maker, the expectation of a specific decision is not enhanced enough to establish a constitutionally protected interest in the procedures. *Id.*

Here, there is nothing in the record to support Plaintiff's contention that the University contemplated that the disciplinary process applies to administrative positions. The Faculty Handbook is clearly limited to cover persons who have received tenure or who are on the tenure-track. The Court finds that the Faculty Handbook does not create a property interest in the project director position of a federal grant. While the University has created procedures to use in the disciplinary process, these procedure do not create a property interest in a project director position of a federal grant.

Additionally, there is nothing in the record that indicated that Plaintiff filed any grievance with the University over his removal as project director. While Plaintiff was not required by 42 U.S.C. §1983 to exhaust state remedies before bringing his federal claims, the existence of post-decision procedural safeguards bear on whether the Constitution requires Defendants to provide Plaintiff with a pre-decision hearing.

Plaintiff also argues that Washington law provides that where a contract sets forth a time the employee can only be terminated for cause. Plaintiff points to the grant approval document as setting forth the terms of the contract. The grant approval document, if it is a contract, is an agreement between Washington State

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13**

University and the Department of Agriculture, and does not provide Plaintiff with a property interest. *See* ECF No. 25, Ex. A.

Furthermore, Plaintiff has not shown that a property interest exists in the increased funding that he could have received from the grant because it is undisputed that he has obtained the alternative employment he required and the increased salary that goes with it. He has obtained the same amount of additional salary from other non-NARA sources as he could have received from NARA.

Finally, the Plaintiff's proof that the course of dealing of WSU created a property interest in his continuation as NARA Project Director is not sufficient. Even accepting the allegation that other grant directors had not been removed, this fact does not convert a grant position into a property interest.

Accordingly, **IT IS HEREBY ORDERED**:

1. Plaintiff's Motion for Partial Summary Judgment, ECF No. 21, is **DENIED**.

2. Defendants' Motion for Summary Judgment, ECF No. 22, is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order and forward copies to counsel and close the file.

**DATED** this 2nd day of May, 2013.

*s/Robert H. Whaley*
ROBERT H. WHALEY
United States District Judge

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT; GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** ~ 14